## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **INTERNATIONAL UNION OF PAINTERS AND** | : | **CIVIL ACTION** |
| **ALLIED TRADES DISTRICT COUNCIL** | : | |
| **NO. 21 HEALTH AND WELFARE FUND** | : | **NO.** |
| **2980 Southampton-Byberry Road** | : | |
| **Philadelphia, PA 19154** | : | |
| | : | |
| **and** | : | |
| | : | |
| **INTERNATIONAL UNION OF PAINTERS AND** | : | |
| **ALLIED TRADES DISTRICT COUNCIL NO. 21** | : | |
| **ANNUITY FUND** | : | |
| **2980 Southampton-Byberry Road** | : | |
| **Philadelphia, PA 19154** | : | |
| | : | |
| **and** | : | |
| | : | |
| **INTERNATIONAL UNION OF PAINTERS AND** | : | |
| **ALLIED TRADES DISTRICT COUNCIL NO. 21** | : | |
| **VACATION FUND** | : | |
| **2980 Southampton-Byberry Road** | : | |
| **Philadelphia, PA 19154** | : | |
| | : | |
| **and** | : | |
| | : | |
| **INTERNATIONAL UNION OF PAINTERS AND** | : | |
| **ALLIED TRADES DISTRICT COUNCIL NO. 21** | : | |
| **FINISHING TRADES INSTITUTE OF THE** | : | |
| **MID-ATLANTIC REGION** | : | |
| **2980 Southampton-Byberry Road** | : | |
| **Philadelphia, PA 19154** | : | |
| | : | |
| **and** | : | |
| | : | |
| **INTERNATIONAL UNION OF PAINTERS AND** | : | |
| **ALLIED TRADES DISTRICT COUNCIL NO. 21** | : | |
| **JOB RECOVERY FUND** | : | |
| **2980 Southampton-Byberry Road** | : | |
| **Philadelphia, PA 19154** | : | |
| | : | |
| **and** | : | |

PAINTERS DISTRICT COUNCIL NO. 21              :
SCHOLARSHIP FUND                              :
2980 Southampton-Byberry Road                 :
Philadelphia, PA 19154                        :
                                              :
            and                               :
                                              :
PAINTERS DISTRICT COUNCIL NO. 21              :
JOB ORGANIZATION PROGRAM TRUST FUND           :
2980 Southampton-Byberry Road                 :
Philadelphia, PA 19154                        :
                                              :
            and                               :
                                              :
JOSEPH ASHDALE, TRUSTEE                       :
International Union of Painters and Allied Trades   :
District Council No. 21 Health and Welfare Fund    :
2980 Southampton-Byberry Road                 :
Philadelphia, PA 19154                        :
                                              :
            and                               :
                                              :
INTERNATIONAL UNION OF PAINTERS AND           :
ALLIED TRADES DISTRICT COUNCIL NO. 21,        :
2980 Southampton-Byberry Road                 :
Philadelphia, PA 19154                        :
                                              :
                    Plaintiffs,               :
                                              :
            v.                                :
                                              :
EASTERN SOLAR GLASS, INC.                     :
267 Boyer Avenue                              :
West Berlin, NJ 08091                         :
                                              :
                    Defendant.                :
                                              :

# C O M P L A I N T

### The Parties

1.      Plaintiffs International Union of Painters and Allied Trades District Council No. 21 Health and Welfare Fund, International Union of Painters and Allied Trades District Council No. 21 Annuity Fund, International Union of Painters and Allied Trades District Council No. 21 Vacation Fund, International Union of Painters and Allied Trades District Council No. 21 Finishing Trades Institute of Mid-Atlantic Region, Painters District Council No. 21 Scholarship Fund, Painters District Council No. 21 Job Organization Program Trust Fund (collectively "Plaintiffs Funds") are employee benefit plans pursuant to Section 3(3) of the Employee Retirement Income Security Act (hereafter "ERISA"), 29 U.S.C. Section 1002(3), with their principal offices located 2980 Southampton-Byberry Road, Philadelphia, PA 19154, within this judicial district. Plaintiff Funds are due and owing relief sought from Eastern Window Specialists, as set forth below.

2.      Plaintiff, Joseph Ashdale, in his capacity as a trustee of the Plaintiff Funds, is a fiduciary within the meaning of Section 3(21)(A) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1002(21)(A).

3.      Plaintiff, International Union of Painters and Allied Trades District Council No. 21 is an unincorporated labor organization within the meaning of Section 3(5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §185 with its principal office located at 2980 Southampton-Byberry Road, Philadelphia, PA 19154.

4.      Defendant, Eastern Solar Glass, Inc., (hereinafter "Defendant") is a corporation doing business at 267 Boyer Avenue, West Berlin, New Jersey 08091.

5.      Defendant is engaged in interstate commerce within the meaning of Section 2(6) of the

Labor Management Relations Act of 1947, as amended, 29 U.S.C. §152(6) and has employed members of Plaintiff Union pursuant to a collective bargaining agreement in the Commonwealth of Pennsylvania.

6.      Defendant is an Employer within the meaning of Section 2(2) of the National Labor Relations Act and Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§152(2) and 185; and Section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1002(5) and 1145.

Jurisdiction & Venue

7.      Jurisdiction of the District Court is invoked pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §185, in that the Defendant is an employer within the meaning of the Labor Management Relations Act, and party to a collective bargaining agreement which forms the basis and substance of the matters at issue in this litigation; and 28 U.S.C. §1337, providing for original jurisdiction in civil actions that arise out of an Act of Congress regulating commerce.

8.      Jurisdiction of the District Court is invoked pursuant to the provisions of Section 502 and Section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1132 and 1145, in that Defendant is an employer as defined by ERISA.  The Eastern District of Pennsylvania is the proper venue under ERISA section 502(e)(2), 29 U.S.C. §1132(e)(2), because the Plaintiff funds are administered in this judicial district.

Cause Of Action

9.      Defendant is party to a collective bargaining agreement with the Plaintiff International Painters and Allied Trades District Council No. 21 (or has been a party to a collective bargaining agreement), which requires(d) that the Defendant make certain contributions on a timely basis to the Plaintiff Funds.

10.      As part of Defendant's obligation under the collective bargaining agreement(s) and the Trust Agreement governing the Funds, Defendant is required to submit to periodic audits to verify the payroll figures upon which contributions are based. The Collective Bargaining Agreement, in relevant part, is attached hereto as Exhibit "A".

11.      An audit was completed on July 14, 2017, for the period January 1, 2014 through December 31, 2016, finding a delinquency of $80,268.37, consisting of principal in the amount of $58,984.15, continuing interest in the amount of $7,027.34, liquidated damages in the amount of $11,796.83, and cost of audit in the amount of $2,460.05.

12.      These amounts may change as Defendant makes payments, partial payments and/or fails to make payments due as a result of additional or prior work performed under the collective bargaining agreement(s).

13.      Defendant has been notified of amounts due under the audit, but has failed or refused to make appropriate and timely payments as required. (Please see attached Exhibit "B").

**WHEREFORE**, Plaintiffs request this Court to grant judgment against the Defendant and in favor of the Plaintiffs as follows:

a.      Judgment in the amount found to be due and owing when this cause of action reaches judgment;

    b.       An accounting and audit of all amounts due to the various benefit funds, based upon examination of Defendant's payroll records;

    c.       Reasonable counsel fees, interest and costs of suit, including costs of audit;

    d.       Injunctive relief ordering the Defendant to submit to audits of its payroll records by an auditor of the Plaintiffs' choosing at such reasonable times as the Plaintiffs may request;

    e.       Liquidated damages as provided by the applicable collective bargaining agreement(s) and by Section 502 of ERISA; and

    f.       Other relief as the Court deems just and proper.


Respectfully submitted,

**SPEAR, WILDERMAN, P.C.**


BY: _____
NICHOLAS J. BOTTA, ESQUIRE
Suite 1400
230 S. Broad Street
Philadelphia, PA  19102
(215) 732-0101
Attorney for Plaintiffs

Dated:  January 9, 2018

-4-

# EXHIBIT "A"

AGREEMENT

BETWEEN

I.U.P.A.T. DISTRICT COUNCIL 21/

GLAZIERS AND GLASSWORKERS UNION LOCAL 252

OF GREATER PHILADELPHIA, PENNSYLVANIA AND VICINITY

AND

EASTERN SOLAR GLASS, INC.

JUNE 1, 2013 TO MAY 31, 2017

## **TABLE OF CONTENTS**

ARTICLE I      RECOGNITION ................................. ..................................1

ARTICLE II     WAGES, HOLIDAYS, VACATIONS, LEAVES................4

ARTICLE III    HEALTH AND WELFARE PLAN ....................................9

ARTICLE IV     HOURS.........................................................................12

ARTICLE V      GENERAL CONDITIONS................................................13

ARTICLE VI     GRIEVANCE AND ADJUSTMENTS............................15

ARTICLE VII    AUTO GLASS INSTALLATION ...................................16

ARTICLE VIII   EXPIRATIONS AND RENEWAL ...................................18

THIS AGREEMENT is made and entered into June 1, 2013by and between Eastern Solar Glass, Inc., hereinafter called the "Employer" and District Council 21/ Glaziers and Glass Workers Union Local 252, 2980 Southampton-Byberry Road, Philadelphia Pennsylvania 19154, hereinafter called the "Union".

## ARTICLE I

## RECOGNITION

**SECTION 1.** The said Eastern Solar Glass, Inc., hereinafter called the "Employer" of Greater Philadelphia, Pennsylvania recognizes District Council 21/ Glaziers and Glass Workers Union Local 252 of Philadelphia, Pennsylvania, as the duly authorized bargaining agency for those employees of the Employer within the unit appropriate for the purposes of collective bargaining on the employer premises, and who are employed in fabrication, jobbing, handling and delivery of glass, auto glass, plastics and kindred products. Also, the operation of overhead cranes, fork lift equipment, scissor jacks, and any other material handling equipment except maintenance equipment.

The Employer hereby agree to deal and negotiate with the said Union in all matters concerning hours, wages and working conditions of its employees.

This Agreement shall not be applicable to office force, sales forces, management, supervision and salaried personnel. It is agreed that any employee, acting or serving in the capacity of watchman, janitor, fireman or maintenance man, does come within the purview of the Agreement, providing they do not do any work of the Union's jurisdiction. Nothing herein contained shall be construed as prohibiting an officer, member of the management or the supervisory force from assisting in or doing any of the inside work. Excessive work performed by the supervisory force is that which results in or is occasioning a lay-off

**SECTION 1 (a). NON DISCRIMINATION CLAUSE:** "The Company and the Union each agree that there shall be no discrimination by either party against any applicant, employee or union member because of race, creed, color, religion, sex, age, or national origin, and that each party agrees to adhere to and conform with the Presidential Executive Order 11246 and Title VII of the Civil Rights Act of 1964. This also includes compliance with Section 503 of the Rehabilitation Act of 1973, Handicapped Public Law 930112 and Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974."

**SECTION 1 (b). GENDER NEUTRALITY:** In this Agreement, whenever the context so requires, the reference to the masculine gender will include the feminine gender.

**SECTION 2.** The terms, conditions and covenants of this Agreement shall be binding upon the parties within the geographical territory of District Council 21.

It is understood and agreed that should the said Employer establish a branch of its business or a wholly owned subsidiary within the said geographical jurisdiction of the District Council in which the classification of work performed is substantially the same as that hereinafter described, then in such an event, the terms, conditions and covenants of this Agreement shall co-extend and be binding upon the said Employer, except in the case of the acquisition of a branch or a wholly owned subsidiary whose employees are represented by a Collective Bargaining Agent.

**SECTION 3.** The Employer agrees that it will in no way discriminate against any employee for Union membership or for serving on Union Committees, and the Union agrees that it or any of its members will not carry on any Union activity on Employer's time. There shall be no Union meeting on Company property.

**SECTION 4.** It is understood and agreed by and between the parties hereto that as a condition of continued employment, all persons who are hereafter employed by the Employer in the unit which is the subject of the Agreement shall make application to the Union thirty (30) days from the date of their employment. The continued employment by the Employer in said unit of persons who are already members of the Union shall be conditioned upon these persons continuing their payment of the periodic dues of the Union. The failure of any person to make application to the Union within said period of time shall obligate the Employer upon written notice from the Union that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person. Further, the failure of any person to pay the periodic dues of the Union shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person.

**SECTION 5.** The Company reserves and is given the fight to hire and discharge any of its employees, subject to the provisions of Section 2 and 3 hereof, set forth above. The management of the Company is reserved by the Company and shall be vested exclusively in the company, and the Company shall have the right to determine how many employees it will employ or retain in all departments and all classes of departments, together with the fight to exercise full control of its business, except as expressly restricted in the contract.

**SECTION 6.** Newly hired employees shall have a trial or probationary period of thirty (30) days. Such employees shall not have recourse to grievance procedures.

**SECTION 7. CASUAL EMPLOYEES:** The employer may hire employees during the time period May 15 through September 15, or for one month at any other time of each year for the purpose of replacing current employees unavailable to work due to vacations, seasonal demands, illness, leaves of absence and other reasons. Such replacement workers and employees shall be known as casual employees. Such worker who is permitted by the Employer to work beyond September 15, shall be required to become a Union member as provided in this Agreement and shall acquire seniority retroactive to the date of hire. Casual employees shall not be eligible for benefits under this contract (such as insurance, holidays, vacations, etc.) until such employee goes on the seniority list. Casual employees shall pay Union dues but no initiation fee until such time as he goes on the seniority list.

In the event a lay-off is necessary, all casual employees will be laid off first.

**SECTION 8.** Recognizing the competitive nature of the flat glass and mirror fabrication and distribution industry, and the desirability of maintaining a balance within the industry, in this market, the Union agrees that if it enters into, renews, or extends any labor Agreement with another Employer operating such distributing or fabricating business in the said market area containing terms, wages, hours, or conditions in said Agreement, which are considered more favorable to said other Employer's option, said provisions shall be incorporated into this Agreement and supersede the other less favorable provisions.

The Union agrees that, upon demand of the Employer, it shall exhibit to the Employer, or its authorized representative, any agreement entered into with another glass 'distributor or fabricator in this area. A failure of the Employer to insist upon the application of the Section, whether said failure is intentional, or a result of an oversight, shall not constitute a waiver of the Employer's fight to demand enforcement of this provision on other occasions.

This section is not intended to restrict the Union's ability to organize other Employers. The Union may agree to reasonable modifications of the terms and conditions of this Agreement with another Employer for the first contract negotiation purposes. However, such modifications must return to the parity of this Agreement on or before the eighteenth month, unless otherwise agreed by the Employer party of this Agreement.

# ARTICLE II

## WAGES - HOLIDAYS - VACATIONS - LEAVES

**SECTION 1.** It is agreed between the Union and the Employer that all wages shall be paid weekly at the later part of each week. (The Employer is not allowed to retain more than four days pay for each employee.)

**SECTION 2.** There shall be two Divisions:

> (a) Custom
> (b) Distribution

**SECTION 3.** All current employees in either division, i.e., those hired prior to June 1, 1990, shall be red circled with regard to classification, wage rate and increases and shall be paid as follows:

**SECTION 4. CURRENT EMPLOYEES:**

> From June 1, 2013 to May 31, 2014

> Skilled ......................................................$20.67
> Unskilled .................................................$19.27
> Glass Handler ...........................................$15.76

> $ .85 Per Hr. - June 1, 2014 - May 31, 2015
> $ .95 Per Hr. - June 1, 2015 - May 31, 2016
> $1.00 Per Hr. - June 1, 2016 - May 31, 2017

> The distribution of wages per hour each year will be by secret ballot vote prior to June 1st of each year and the employer will be notified of distribution into any fund.

**(1) SKILLED WORKERS:** Roughers, Emeriers, Smoothers, White Wheel Polishers, Rough Bevel Polishers, Cutters, Scratch Polishers, Machine Block Polishers, Examiners, Silverers, Mitre Cutters, Mitre Cut Machine Operators, and Sand Blast Design Cutters, Belt Machine Operators, Tube Hole Drillers, Malette Operators, Drivers, Metal Men, Sand Blasters, Mirror Framers, Hole Drillers, Silverers Helper, Hand Grip Machine Operators, and Leadmen. Where there is not a Teamster contract, Drivers will receive skilled wages.

**(2) UNSKILLED WORKER:** All other work not covered by above classifications.

**(3) GLASS HANDLER:** Duties include, but are not limited to the following: Loading and unloading trucks, boxing and opening cases, operating machines, assembling, and otherwise acting as helpers, using all available mechanical equipment.

**(4)** The Employer may place any employee classified as a skilled worker in any job at the plant for which such skilled employee is qualified. Provided further, however, that such employee shall receive not less than the skilled worker's rate of pay.

## SECTION 5. CUSTOM DIVISION - GLASS HANDLER

(1) A Glass Handler designed as a Trainee for a skilled position (e.g. driver, cutter) shall be paid 70% of the skilled rate for one year, 80% for the second year, and 90% for the third year. At the end of three years, he receives the full skilled rate.

(1a) The same contribution will apply for trainees as exists for skilled and unskilled workers regarding dues and benefits.

## SECTION 6. DISTRIBUTION DIVISION. The Distribution classification shall be as follows for employees hired in to this Division after June 1, 2013:

A.  Skilled - wage rate to be the same as provided in the Union's Collective Bargaining Agreement with the flat Glass Distributors.

B.  Glass Handler - wage rates to be the same as provided in the Union's Collective Bargaining Agreement with the Flat Glass Distributors.

## SECTION 7. INDUSTRIAL/UTILITY CLASSIFICATION

Refer to District Council 21/Glaziers Local Union 252 Industrial Worker Agreement.

**SECTION 8.** It is agreed by and between the parties herein that during the life of this Agreement, should new machinery processes or skills be introduced and/or developed other than those specifically stated in this Agreement, then upon request by the Union or the Employer, the parties agree to negotiate such new rates of pay as the circumstances may require.

**SECTION 9. JOB VACANCIES-** The employer will post an informational notice of bargaining unit vacancies allowing employees to state their interest for consideration. Employees in vacation or sick leave will be informed of the posted notice by the Shop Steward or Plant Manager.

Qualified and acceptable employees, as determined by the Employer, will be offered by seniority a probationary period of two weeks, for the Supervisors to determine if performance is satisfactory. Unsuccessful employees will be returned to their previous job. The next senior acceptable employee will be offered a trial opportunity if the vacancy remains.

At all times, the employer is free to hire from other sources if, in its opinion, none of the employees are suitable, available or merit consideration.

**SECTION 10.** Employees temporarily assigned to do lower rated work other than their regular work will continue to receive their regular rate of pay. Employees temporarily assigned to a higher job classification shall receive the regular higher rate for time worked.

**SECTION 11. HOLIDAYS-** The following holidays with pay shall be granted to active employees who have thirty (30) continuous calendar days of work or more of service with the present Employers: New Year's Day, Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Friday after Thanksgiving Day, the scheduled work day before Christmas, Christmas Day, provided the employee works his full scheduled working day before and his full scheduled working day after each such holiday.

Under no circumstances, shall a member of the Union be allowed to work on Labor Day.

Recognized holidays occurring on a Sunday and celebrated on Monday are paid holidays. Sickness preventing full qualification for a paid holiday shall be within the employer's discretion. Employees who are laid off, are nevertheless qualified to receive holiday pay, if at the time of the holiday such lay off period has not extended beyond one week. In the event that a paid holiday falls on Saturday, but is celebrated on the preceding Friday, the Employer has the option of closing the operation on Friday, or working. If the operation is closed, the Employer will issue five (5) days pay for four (4) days actually worked. Or, the employer may continue operation and issue six (6) days pay for five (5) days actually worked. When this particular holiday arrangement occurs, there will be double-time pay only for actual time worked on the Saturday holiday.

Holidays may be deferred to change by mutual agreement between the Employer and individual employee with one week prior notice to the Union where there is no agreement as to an individual; the holiday schedule herein shall apply.

**SECTION 12. PERSONAL LEAVE DAYS:** Employees shall be eligible for two personal leave days with pay in each contract year (June 1 through May 31). New employees shall be eligible after sixty-five (65) worked days. Except in emergency or illness situations, personal leave days shall be arranged in advance, provided an employee works his full scheduled working day before and after such leave.

**SECTION 13. VACATIONS:** The Employer will give each employee who is a member of the Union covered by this Agreement, one (1) week vacation with forty (40) hours pay at the straight hourly rate in effect at time the vacation is taken provided the employee has worked 1,840 hours or more at straight time (overtime not included) between June 1 of the previous year and May 3 1 of the year which the vacation is taken.

New employees who, as of September 15, shall have worked the required number of hours, shall be entitled to one (1) week vacation.

Employees with three (3) years or more continuous service record with the employer as of any June 1st during the life of this contract, will get two (2) weeks vacation with eighty (80) hours of pay at the straight hourly rate in effect at the time the vacation is taken, provided the employee has worked 1,600 hours or more at straight time (overtime hours also counted as straight time hours worked, not hours paid) between June 1st of the previous year and May 31st of the year in which the vacation is taken.

Employees with ten (10) years or more of continuous service record with the Employer as of June 1st during the life of this contract will get three (3) weeks vacation with one hundred and twenty (120) hours pay at the straight hourly rate in effect at the time the vacation is taken, provided the employee has worked 1600 hours or more at straight time (overtime hours also counted as straight time hours worked, not hours paid) between June 1st of the previous year and May 31st of the year in which the vacation is taken. The additional week is to be taken during January, February, March, April or May of the fiscal year.

Employees with twenty (20) years or more of continuous service record with the Employer as of June 1st during the life of this contract will get four (4) weeks vacation with one hundred and sixty (160) hours pay at the straight hourly rate in effect at the time the vacation is taken, provided the employee has worked 1600 hours or more at straight time (overtime hours also counted as straight time hours worked, not hours paid) between June 1st of the previous year and May 31st of the year in which the vacation is taken. This week shall be taken between January and May. It can be time off or cash payment, as per management's decision.

Vacations will, as far as possible, be granted at time most desired by the Employees, but shall be taken in such order that it will not interfere with orderly operations. Vacation will be granted between June 1st and October 1st of the fiscal year (except for the third and fourth week vacation -requirements of which have already been specified).

In the process of computing an employee's time worked, the following items shall be computed as time worked:

Previous Vacation: Vacation of the previous year.

Paid Holidays

Compensation of Lost Time: Time lost due to Worker's Compensation injury, not to exceed six months.

Layoff Times: Time lost due to layoff up to two (2) months time.

Continuous Illness: Any employee who has lost no time other than that due to a continuous illness of over six (6) weeks and not exceeding twelve (12) weeks shall have such time counted, for vacation purposes only, as time worked.

Religious Holiday: Holidays of this nature when the management closes the plant for observance of such days.

Union Committees: Time lost due to being a Union Committee member. Only committees as covered in the Labor Agreement or in the interest of harmony in the industry. Time lost on strictly Union business shall not be considered as time worked.

OBSERVANCE OF DEATH IN THE IMMEDIATE FAMILY

Employees who do not quality for a vacation as outlined above, but who shall have worked 920 hours but less than 1840 or more regular hours shall receive a vacation as follows:

Employees with more than one (1) year and less than three (3) years continuous service record with the company shall receive 2% of the actual straight time hours worked as paid vacation.

Employees with three (3) or more years' continuous service record with the Company shall receive 4% of the actual straight time hours worked as a paid vacation.

Employees with ten (10) years continuous service record with the Company shall receive 6% of the actual straight time hours worked as a paid vacation.

Employees with twenty (20) years continuous service record with the Company shall receive 8% of the actual straight time hours worked as a paid vacation.

**SECTION 14. FUNERAL LEAVE:** Upon the death of an employees spouse, child, step-child, brother, sister, mother, step-mother, father, stepfather, grandmother, grandfather, or grandchild of an employee on the active payroll, the employee shall receive a paid absence of two (2) days, and the employee must be scheduled to work. Upon the death of an in-law, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law of an employee on the active payroll, the employee shall be entitled to receive a paid leave of absence of one (1) day, applicable once per contract year starting June 1st through May 31st and the employee must be scheduled to work.

**SECTION 15. DUES CHECK-OFF:** For period from June 1, 2013 to May 31, 2017. It has been mutually agreed that the Employer will, upon receipt of property signed authorizations, withhold from net wages the amount of $.40 for each hour (vacations and holidays are paid hours and are included); $.60 for each time triple and one half hour, $.80 for each double time hour, $1.20 for each triple time hour, as specified on the authorization for skilled and unskilled classification. Glass Handlers dues to be withheld at $.20 per hour as above.

Dues Check-Off to be used for Union Administrative Dues only and no other purpose.

## ARTICLE III

## D.C. 21 HEALTH AND WELFARE PLAN

**SECTION 1.** The parties have mutually agreed that the Welfare Plan heretofore established providing for benefits for current employees shall continue as jointly administered trust. The Employer shall contribute:

| | |
|---|---|
| From June 1, 2013 to May 31, 2014 | $6.70 per hour for all hours worked at straight time rate to a maximum total of 2080 hours per year per employee. |
| From June 1, 2014 to May 31, 2015 | To be determined at a later date. |
| From June 1, 2015 to May 31, 2016 | To be determined at a later date. |
| From June 1, 2016 to May 31, 2017 | To be determined at a later date |

## BENEFITS

Any additional amounts, which may be required to maintain the benefits in the Health & Welfare Plan, shall be diverted from the Wage Rate in Article II.

**SECTION 2. I.U.P.A.T. UNION AND INDUSTRY FUND:**
Commencing the first day of June 1, 2013 and for the duration of this Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the I.U.P.A.T. Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

Effective June 1, 2013, for each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution for Skilled Worker Classification of $3.91 per hour to the above named Pension Fund.

For the Unskilled Worker Classification, the Employer shall make a contribution of $2.56 per hour to the above named Pension Fund.

For the Glass Handler Classification, the Employer shall make a contribution of $2.02 per hour to the above named Pension Fund.

Effective June 1, 2013, all new employees hired after said date will receive an Annuity in the amount of $2.68 per hour.

For purposes of this Section, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

Contributions to the Health & Welfare and Pension Funds and Annuity Fund, where applicable, to begin with the first day of employment.

The payments to the Pension Fund required above shall be made to the I.U.P.A.T. Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dates April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had signed the same. The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trust, as amended from time to time.

All contributions shall be made at such time and in such a manner as the Trustees require, and the Trustees may at any time conduct an audit in accordance with Article VI, Section 6 of the said Agreement and Declaration of Trust.

If the Employer fails to make contributions to the Pension Fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Section shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause, which may be provided or set forth elsewhere in this Agreement.

The Pension Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the I.U.P.A.T. Union and Industry Pension Fund as a deduction for income tax purposes.

## SECTION 5. LMCF:

1(a) Commencing with the 1st day of June 2013, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the Painters and Allied Trades Labor Management Cooperation Fund ("Fund") for each employee covered by this Agreement, as follows:

(b) For each hour or portion thereof, for which an employee receives pay, the Employer shall make a contribution of $.02 per hour to the above named Fund.

(c) For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(d) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

(e) The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

2. The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3.      All contributions shall be made at such time and in such manner, as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

4.      If an Employer fails to make contributions to the Fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause, which may be provided or set forth elsewhere in this Agreement.

## ARTICLE IV

## HOURS

**SECTION 1.** The regular working week shall consist of five (5) days from Monday to Friday, inclusive - eight hours each day, divided into periods from 8:00 AM to 12:00 Noon, 12:30 PM to 4:30 PM.

**SECTION 2. STARTING TIME:** May vary between 6:00 a.m. to 8:00 a.m. but not to exceed eight (8) regular hours a day (included is a half hour lunch period). This schedule may be arranged as will be satisfactory to Employer and employee, subject to the approval of the Union.

**SECTION 3. OVERTIME:** All work performed before and after the hours stated in the foregoing sections and all hours worked beyond forty hours per week, except as further modified hereinafter, shall be paid at the rate of time and one-half If a shift other than described above is desired, a second shift rate may be established between the Union and the Employer.

**SECTION 4.** All work performed on Saturdays shall be paid at the rate of time and one half All work performed on Sundays shall be paid for at the rate of double time. All work performed on the specified holidays shall be paid at the rate of double time in addition to the holiday pay as provided in Article II, Section 5.

**SECTION 5.** Past practices of truck driver assignments and product delivery will be continued in the interest of Employer needs and the continuance of employment of Local 252 members.

Truck drivers shall have assignable daily starting times to be followed by eight regular hours of work, of driving, delivery, shop or warehouse work, plus a half hour lunch period. Warehouse or shop assignments are optional and the driver may elect to leave work prior to completing the ten hours following a driving assignment, provided no other driving assignments are available and the driver will be paid only for hours worked.

**SECTION 6. SHIFT DIFFERENTIAL:** Employee assigned to a shift, which begins after the first shift ends shall be paid a shift differential of twenty cents ($.20) per hour. (An employee assigned an eight-hour shift overlapping with the first shift and the second shift will receive a shift premium for the time worked past 3:30 p.m.). Transfers to these intermediate shifts will be priory discussed with the Union.

**SECTION 7. REST PERIOD:** The Employer will provide a ten minute rest period to workers during each four hour work period of the eight hour day. These rest periods may be delayed or advanced at the Employer's convenience to maintain certain operations. Alternatively, the Employer may continue prior past practices.

**SECTION 8.** Glassworkers may be permitted to work on jobsites only with Union approval provided they are paid at current Glaziers rates.

## ARTICLE V

## GENERAL CONDITIONS

**SECTION 1.** It is agreed that seniority shall be based on length of continuous service in an employee's classification of work; that is Glass Worker. Glass Handlers have plant wide seniority, in respective buildings.

If reduction of working force becomes necessary, due to lack of work or for any other reason deemed necessary by Management, the employee with the least seniority in his particular classification of work shall be laid off first and called back to work in his classification in the reverse order, provided he is capable of fulfilling the requirements of the work on hand.

Seniority shall be terminated by: (1) voluntary quitting, (2) discharge, (3) failure to return to work within five (5) days if written notice by registered mail or recall sent by Employer to employee's last known address in Employer's records, unless prevented by sickness previously substantiated by a doctor's certificate during sickness, (4) if the employee has been laid off for a period of six (6) months.

Any employee who has become a full time paid employee of the Union during the term of this and any succeeding Agreement, shall nevertheless continue to retain and accumulate his seniority as an employee herein.

The Employer, shall at all times, have a fight to temporarily transfer any one or more employees covered by this Agreement from one occupation or duty to another or from one job to another subject, however to Article II, Section (s) 3 and 9, regardless of whether or not employees in a particular classification may be on lay-off at the time.

The Employer shall notify the Union prior to all layoffs and new hiring for a period of six (6) months from the effective date of this Agreement.

**SECTION 2.** One worker, or two, if deemed necessary, shall be selected by the Union to be known as the Shop Steward. The Shop Stewards shall have the right to see that all articles of this Agreement are lived up to. They shall be the last men laid off in their seniority group classification, provided they are capable of fulfilling the requirement of work on hand. Stewards shall have seniority preference in respective classification for lay-off and recall in respective classification only.

**SECTION 3.** Any employee laid off during a work day shall at said time be paid in full, and shall receive not less than four (4) hours pay. If an employee is laid off after working four (4) hours, he shall be paid only for the actual hours worked. If the Union is called upon to supply an employee, but the Employer immediately advised the person sent by the Union that he cannot be used, such person shall be entitled to one (1) hours' pay.

**SECTION 3(a).** In the event of an emergency or extraordinary circumstances when work may not be available, the Employer will try to provide at least one (1) hour telephone notice to inform employees not to report to work. If notification is not received, any employee scheduled to work and reports at the scheduled starting time will be assured at least four (4) hours work.

**SECTION 4.** Any employee who through physical disability or incapacity is unable to command the regular scale of wages may be permitted to make such arrangements with his Employer as will be satisfactory to both, subject to approval by the Union.

**SECTION 5.** The right to establish and maintain rules and regulations covering the operations of the Employer and the conduct of its employees (provided such rules and regulations are not in conflict with this Agreement) are vested exclusively with the Employer. Such rules and regulations must be posted at all times.

**SECTION 5 (a).** The Employer may provide lockers for its employee and has a fight to inspect lockers with employee and Shop Steward present. The employee reserves the right not to use the locker. Lockers shall be secured with employee's lock and used exclusively for work-related items. Employees are required to empty lockers and leave them unlocked whenever they go on lay-off, leave of absence, vacation or are separated from the Company.

**SECTION 5(b).** The Company reserves the right to establish an incentive plan of its own design at such times as it deems appropriate and to modify or withdraw it entirely as it deems to be in the best interest of the Company. Such plans will be discussed with the Union prior to putting them into effect. The Union has a right to disapprove plans for safety reasons only.

**SECTION 3.** In the event that an employee feels he has been unjustly discharged or refused re-employment, he or his representative shall notify the Employer within five (5) days of the date of occurrence. In absence of such notification within the time prescribed, all rights with respect thereto shall be waived by the aggrieved party. Any difference arising under this section shall be subject to Article VI, Section 3.

In the event, during the term of this Agreement, there is any controversy or dispute as to the meaning or application of the provisions of this Agreement or any other matter arising hereunder, there shall be no suspension of work, and the matter shall be referred for settlement and adjustment to the Business Manager/Secretary-Treasurer or District Council Representative and the Employer's Labor Relations Representative and/or other Company Representative. Such meeting shall be arranged as promptly as possible.

In the event no satisfactory adjustment is made, the matter shall be submitted by the parties to an Arbitrator selected in accordance with the rules of the American Arbitration Association. The decision of the Arbitrator shall be final and binding upon the parties. The compensation and expenses of the Arbitration procedure, and the Arbitrator shall be shared equally by the Employer and the Union. There shall be no cessation of work or lockout while this Agreement is in force, regardless of any controversy arising between the Employer and any of its Union employees whether such controversy is related to a branch of this Agreement or otherwise.

**SECTION 4.** The Union agrees that it will not engage in, initiate, authorize, sanction, or support any strike, slow down or stoppage of work, whatsoever, and the Employer agrees not to lock-out any employee or group of employees as this Agreement provides for the amicable adjustment of any and all disputes and grievances. Any employee violating this article shall be subject to discharge.

**SECTION 5.** Any differences, dispute or grievance not called to the attention of the Employer or Union within five (5) days of its occurrence shall be deemed to be settled and all rights with respect thereto waived by the party aggrieved.

## ARTICLE VII

## AUTO GLASS INSTALLATION

**SECTION 1.** The regular work week for auto glass installation shall be Monday through Sunday.

**SECTION 6.** Any employer who has a record of prompt payment for the benefits described in all the various clauses in this Agreement shall not be required to post security. When security is required it must be posted for the duration of this Agreement. The Welfare Fund Trust Agreement of June 1, 1966 and the Pension Fund Trust Agreement of June 10, 1963 as amended are binding on all parties of this Agreement.

The Trustees shall have the power to demand, collect, and receive Employer contributions to the Fund. Any Employer who falls to submit the required contribution and report within thirty (30) days from the day of the month for which hours are reportable, shall be considered to be delinquent after the first lateness in any contract year and will be liable for breach of contract; and each such delinquent Employer shall be required to pay a delinquency charge of $100.00 per month for each month delinquency continues. This charge will accumulate for each additional delinquent month. In addition, if any Employer shall fail to make the required contributions (including delinquency charges) for a period of two (2) months, then the Trustees shall require such Employer to furnish a surety bond in such amount as they shall reasonably require, but for not less than One Thousand ($1,000.00) Dollars, to insure and guarantee all future payments to the Fund.

**SECTION 7.** It has been agreed that the Employer, the Union, and Local Occupational Safety and Health Laws in effect - and that a joint Union/Management Communications and Safety Committee will be formed to study potential hazards, recommend safe operation procedures and use of new safety equipment.

**SECTION 8.** A Policy Committee of Union and Management to meet when necessary or every three (3) months - purpose: contract violations - if no solution, the dispute is then submitted to the American Arbitration Association.

## ARTICLE VI

## GRIEVANCE AND ADJUSTMENTS

**SECTION 1.** The Employer agrees that a District Council Representative of the Union shall, upon complaint concerning wages being made by any member to the Union, be allowed to examine the work records and time cards of such member.

**SECTION 2.** The District Council Representative of the Union shall be allowed to visit all shops and operations where work is being conducted at all times during the business hours for the purpose of determining whether the provisions of this contract are being properly carried out. On all such visits, the District Council Representative shall first report to and request to be accompanied by a representative of the Employer.

**SECTION 2.** Overtime shall be paid for at the rate of time and one-half for all hours worked over forty (40) hours in any work week. It is agreed, however, that all work performed on Sundays and holidays shall be paid at double time. All work performed on the specified holidays shall be paid for the rate of double time in addition to the holiday pay as provided in Article II, Section 5. In consideration of the Union deleting from the Labor Agreement Washington's Birthday as a paid holiday for Auto Glass Installers, the Company agrees to grant the employees one (1) day off during the contract year for Washington's Birthday. It is understood that to be eligible for the day off, the employee must have been eligible for the particular paid holiday if the holiday if the holiday has been retained in the Labor Agreement. It is further agreed that the day off will be granted either at the time the employee takes his vacation at some other time during the contract year.

**SECTION 3.** It is agreed by and between the Union and the Company that the wage scale for auto glass mechanics shall be the same as the skilled classification.

**SECTION 4.** It is the intention of the parties hereto that the apprenticeship program shall not be applicable to auto glass installation. Recognizing the need for a proper training period, however, the parties hereto agree that all new employees engaged in auto glass installation shall be advanced over a period of 18 months in accordance with the following wage schedule:

Auto Mechanics .................................. Skilled Pay

Auto Class Trainees

First 3 months
(58.5%) of Mechanics Rate

Second 3 months (6)
(65.7%) of Mechanics Rate

Third 3 months (9)
(73%) of Mechanics Rate

Fourth 3 months (12)
(77.33%) of Mechanics Rate

Fifth 3 months (15)
(80%) of Mechanics Rate

Sixth 3 months (18)
(86%) of Mechanics Rate

After 18 months (19th and over)
(100%) of Mechanics Rate

All stated increases appearing hereinabove in relation to trainees shall be automatic increases, payable without demand therefore by the Union or its duly authorized agent.

## ARTICLE VIII

## EXPIRATIONS AND RENEWAL

**SECTION 1.** This Agreement, and designated related executed side Agreements shall become effective, to the extent specifically provided herein, on June 1, 2013 , and shall continue to full force and effect until Midnight, May 31, 2017, and from year to year thereafter, unless either party hereto shall notify the other in writing by certified mail not less than sixty (60) days prior to May 31, 2017or sixty (60) days prior to the end of any succeeding year, of a desire to terminate, modify or amend, this Agreement, and designated related side Agreements. In the event that neither party gives sixty (60) days notice, as specified above, the entire Agreement including designated related side Agreements, if any, shall be automatically renewed for the twelve (12) month period following the most recent date of expiration.

Within thirty (30) days of receipt of such notice, Parties of this Agreement and the related side Agreements through their representatives shall confer and negotiate on such matters.

IN WITNESS THEREOF, the Parties hereto have caused this Agreement and designated Related Agreements to be executed and sealed by their duly authorized representatives on this

_____ Day of _____2013.


_____          _____

JOSEPH T. ASHDALE                EMPLOYER
DISTRICT COUNCIL 21
BUSINESS MANAGER/
SECRETARY-TREASURER


_____

MARK ALLENDORF
DISTRICT COUNCIL 21
BUSINESS REPRESENTATIVE

# EXHIBIT "B"

LAW OFFICES
# SPEAR WILDERMAN
*A Professional Corporation*
230 SOUTH BROAD STREET, SUITE 1400, PHILADELPHIA, PA  19102
TEL: (215) 732-0101   FAX: (215) 732-7790

WARREN J. BORISH*
SAMUEL L. SPEAR
JAMES F. RUNCKEL
CHARLES T. JOYCE*
BENJAMIN EISNER◊
WENDY CHIERICI*
JAMES KATZ*
MARTIN W. MILZ*
LOIS GARBER SCHWARTZ*
WILLIAM B. SANDERSON, JR *
NICHOLAS J. BOTTA
SYRETTA J. MARTIN*
MELISSA A. LOVETT
F. TIGHE BURNS*
THEODORE P. DiMUZIO
CHRISTOPHER R. STOCKTON*

PA BAR EXCEPT:
* PA & NJ BAR
◊PA, NJ & DC BAR

NJ OFFICE:
1040 N. KINGS HIGHWAY
SUITE 202
CHERRY HILL, NJ 08034
(856) 482-8799 FAX: (856) 482-0343

BRUCE E. ENDY
RETIRED, 2017

LEONARD SPEAR
1923 - 2003

LOUIS H. WILDERMAN
1909 - 1993

December 22, 2017

*Via Certified RRR & First Class Mail*

Eastern Solar Glass, Inc.
Attn: Mr. Brian Ashcraft
267 Boyer Avenue
West Berlin, NJ 08091

RE:   **IUPAT District Council No. 21 Employee Benefit Funds - Delinquent Contributions
(First Notice)**

Dear Mr. Ashcraft,

Please be advised that this office is counsel for the above reference Funds.

We have been advised that the Funds conducted a payroll audit of Eastern Solar Glass, Inc. (hereinafter the "Company"), which was completed on July 14, 2017, covering the periods of January 1, 2014 through December 31, 2016.  The audit determined that the Company owes the Funds a total of **$80,131.01** consisting of unpaid fringe benefit contributions in the amount of $58,984.15, interest in the amount of $6,889.98 through the present, liquidated damages in the amount of $11,796.83, and cost of audit in the amount of $2,460.05.  A copy of the audit is attached to this letter.

The Company's failure to remit the reports and/or contributions when due constitutes a violation of both the collective bargaining agreement and federal law.  The Employee Retirement Income Security Act of 1974 (ERISA) provides for civil remedies and damages in such a situation.

The Trustees of the Fund have a fiduciary obligation to pursue the recovery of the delinquent amount owed.  Accordingly, please be advised that legal action will be taken unless this matter is resolve within **ten (10) business days** from the date of this letter.  We urge  the Company to  take

Eastern Solar Glass, Inc.
Page 2 of 2

immediate action to correct these arrearages by making payment to the Funds in the total amount
owed of **$80,131.01.**

If you have any questions, please contact me at (215) 732-0101.  Thank you.

Cordially,
SPEAR WILDERMAN, P.C.

Nicholas J. Botta, Esq.

Enclosures
cc: Brian Smith, Delinquency Controller (via e-mail)

LAW OFFICES

# SPEAR WILDERMAN

*A Professional Corporation*

230 SOUTH BROAD STREET, SUITE 1400, PHILADELPHIA, PA 19102

TEL: (215) 732-0101   FAX: (215) 732-7790

WARREN J. BORISH*
SAMUEL L. SPEAR
JAMES F. RUNCKEL
CHARLES T. JOYCE*
BENJAMIN EISNER0
WENDY CHIERICI*
JAMES KATZ*
MARTIN W. MILZ*
LOIS GARBER SCHWARTZ*
WILLIAM B. SANDERSON, JR *
NICHOLAS J. BOTTA
SYRETTA J. MARTIN*
MELISSA A. LOVETT
F. TIGHE BURNS*
THEODORE P. DiMUZIO
CHRISTOPHER R. STOCKTON*

PA BAR EXCEPT:
* PA & NJ BAR
0PA, NJ & DC BAR

NJ OFFICE:
1040 N. KINGS HIGHWAY
SUITE 202
CHERRY HILL, NJ 08034
(856) 482-8799 FAX: (856) 482-0343

BRUCE E. ENDY
RETIRED, 2017

LEONARD SPEAR
1923 - 2003

LOUIS H. WILDERMAN
1909 - 1993



October 23, 2017

<u>*Via Certified Mail RRR & Regular First Class Mail*</u>

Eastern Solar Glass, Inc.
Attn: Brian Ashcraft
267 Boyer Avenue
West Berlin, NJ 08091

      **RE:   IUPAT District Council No. 21 Benefit Funds ("Funds")**
             **Delinquent Contributions Pursuant to Audit - Notice**

Dear Mr. Ashcraft:

      Please be advised that this office is co-counsel for the above-referenced Funds.

      We have been advised that the Funds conducted a payroll audit of Eastern Solar Glass, Inc. (hereinafter, the "Company"), which was completed on July 14, 2017, covering the periods of January 1, 2014 through December 31, 2016.  The audit determined that the Company owes the Funds a total of **$78,838.21**, consisting of unpaid fringe benefit contributions in the amount of $58,984.15, interest in the amount of $5,597.18, liquidated damages in the amount of $11,796.83, and cost of audit in the amount of $2,460.05.  A copy of the audit is attached to this letter.

      The Company's failure to submit reports and/or contributions when due constitutes a violation of both the collective bargaining agreement and federal law.  The Employee Retirement Income Security Act of 1974 (ERISA) provides for civil remedies and damages in such a situation.

      The Trustees of the Funds have a fiduciary obligation to pursue the recovery of the delinquent

*Eastern Solar Glass, Inc.*
*Page 2 of 2*

amount owed.  Accordingly, please be advised that legal action will be taken unless this matter is resolved within **ten (10) business days** from the date of this letter.  We urge the Company to take immediate action to correct these audit arrearages by making payment to the Funds in the total amount owed of **$78.838.21.**

  If you have any questions, please contact me at (215) 732-0101. Thank you.

     Sincerely,

     Nicholas J. Botta, Esq.

Enclosure

cc:  Brian Smith, Delinquency Controller (via e-mail)